Vernon CALVERT and Erma Calvert,
Appellants-Respondents,

v.

Joe LATIMER and Mauzelle Latimer,
Respondents-Appellants.

Nos. 44484, 44501.

Missouri Court of Appeals,
Eastern District,
Division One.

May 15, 1984.

Rolin T. Boulware, Shelbina, for respondents-appellants.

J. David Collins, Macon, for appellants-respondents.

STEWART, Judge.

Cross appeals from judgment of the circuit court in this multi-faceted action between neighbors. We must upon our own consider the issue of our jurisdiction. In doing so it is necessary that we give an extensive statement of the facts.

Plaintiffs hold legal title in fee simple to the SW¼ of Sec. 11 Twp 58N R9W. Defendants hold legal title to the W½ of the NW¼ of the same section. The northern boundary of plaintiffs' property abuts the southern boundary of defendants' property. Plaintiffs acquired their property in 1941 and defendants acquired their property in 1953. At the time defendants acquired their property there was an old east-west fence between the properties that was overgrown with stubble and in disrepair. The east end of the fence was at a cement corner post that marked the southeastern corner of defendants' property and the center of plaintiffs' property at their northern boundary.

The parties and the owners of other farms in the area were having drainage problems on their land. The parties and others agreed to join in a drainage plan

prepared by the U.S. Soil Conservation Service. As between plaintiffs and defendants it was agreed that the old boundary fence be removed and a drainage ditch dug with a levee created by putting the dirt on the north side of the ditch. The parties referred to the levee as a berm. The ditch and berm were constructed so as to drain the surface water into a branch which ran along the west side of plaintiffs' farm and flowed north through defendants' farm into the North River. There was also a drainage block built into the ditch about 300 feet west of the branch. The ditch was about 18″–24″ deep and 4′ to 6′ wide. A fence was erected on the berm. The east end of the fence was 16 feet north of the cement corner post that marks the center of the northern boundary of plaintiffs' property. It is referred to by the parties as 16 feet north of the true line between the parties and on the farm of defendants. The west end of the fence on the berm was 10 feet south of the true line and on the farm of plaintiffs. A water gap was built across the branch. The work was completed in late 1953. Plaintiffs were to care for the east end of the fence and defendants were to care for the west end.

It was plaintiffs' theory at trial that when the fence was put on the berm the Calverts would give up land at the west end of the fence, an elongated triangular area with the base 10 feet wide. The Latimers in turn would give up land at the east end, an elongated triangular area with a base of 16 feet extending north of the cement post along the north-south line of the eastern boundary of his property. Defendant testified that the fence was placed on the berm to keep it out of the water; that there was no intention to change the boundary.

In 1973 a flood washed out the water gap and 50 to 60 feet of the west end of the berm. There was little flood damage to the east end of the berm. The parties dispute whether there was further damage caused by another flood in 1975. Defendant, his son and another made some temporary repairs to the ditch. In doing so they removed the fence, rolled it up and placed it on plaintiffs' land south of the ditch. Defendants contacted the Soil Conservation Office with respect to permanently repairing the berm and the ditch. The Soil Conservation Office informed defendants that they would not make the permanent repairs unless plaintiffs also sought the repairs. Plaintiffs refused.

Defendants then hired a backhoe and undertook to have the ditch and berm repaired. Latimer extended a wire from a bridge iron with a loop located on the west side of the branch to the cement corner post on the southeast corner of his farm which also marks the center of the north boundary of plaintiffs' farm. This corner post marked the east end of the old fence that existed before the berm was built. The backhoe operator dug the ditch deeper by 18″ to 24″ and widened it north of the wire that defendants had run. He placed the dirt removed from the ditch upon the berm. In doing the work the backhoe operator removed the drainage block from the ditch.

The Calverts, plaintiffs, brought an action in four counts against the Latimers, defendants. The second count was dismissed by plaintiffs. We are concerned only with Counts I, III and IV. In the first count plaintiffs sought to quiet title to the elongated triangular piece of property. That property is 16 feet wide at its base along defendants' eastern boundary and runs in a southwesterly direction following the fence on the berm to form a triangle with its southern edge being the old boundary. They claim the triangle was acquired by adverse possession. Count III is an action in trespass for damages. Count IV in equity sought injunctive relief. Defendants, by their answer sought to have the court determine the boundary line to be the original quarter section line. Judgment was entered upon jury verdict for defendants and against plaintiffs on Count I and for plaintiffs on Count III assessing damages at $1,000.00. The court denied plaintiffs' prayer for a mandatory injunction requiring defendants to restore a fence upon a levee or berm. The court sustained

the plaintiffs' request to enjoin defendants from trespassing upon plaintiffs' land to alter the drainage ditch.

The plaintiffs raised the issue of title to the land south of the fence that was placed on the berm and north of the old boundary. The judgment on Count I of plaintiffs' petition constituted a finding by the jury that plaintiffs had not acquired title to the property in litigation. The judgment was a general judgment against plaintiff. Defendants would argue that this was a boundary dispute in which title to real estate was not involved. Plaintiff, however, did seek to have title to the triangular area north of the quarter section line quieted in them by reason of adverse possession. The evidence in the case put title in issue and precluded a general judgment without specific determination of title. In an action to quiet title the court is required to adjudicate the respective interests of the parties even though plaintiffs fail to establish their claim of title and even if defendants do not request an adjudication of title. *Stottle v. Brittian,* 459 S.W.2d 310, 312 (Mo.1970); *Baldwin v. Black,* 618 S.W.2d 730, 730–731 (Mo.App.1981).

We thus have a situation where an issue in the case remains undetermined. A final appealable judgment must dispose of all parties and all issues. *Goldberg v. Mos,* 631 S.W.2d 342, 345 (Mo.1982). Reluctant as we may be to prolong this litigation we have no jurisdiction and therefore may not speculate with respect to other perplexing issues in this case.

The appeal is dismissed and the cause is remanded for further proceedings.

SNYDER, P.J., and ROBERT WELBORN, Special Judge, concur.